UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA**<br><br>v.<br><br>**PAUL ORTA, JR.,**<br><br>Defendant. | Case No. 24-cr-00146-DLF |

### GOVERNMENT'S SUPPLEMENTAL SENTENCING MEMORANDUM

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this supplemental sentencing memorandum to respond to certain arguments in the defendant's sentencing memorandum.

**I.      U.S.S.G. § 4C1.1 Does Not Apply**

Defendant argues in his sentencing memorandum that Section 4C1.1 should apply in this case because he "did not himself engage in violence or threaten violence." ECF No. 27 at 14-20. However, because Orta used violence or a credible threat of violence against people or property when he threw a body worn camera towards the police line and pushed against bike rack and a line of officers in the West Plaza, Section 4C1.1 does not apply in this case.

Defendant's comparison to *United States v. Yang*, No. 23-cr-100 (JEB) is unavailing. In *Yang*, police were clearing the Rotunda and Yang reacted to police advancing towards the rioters. Here, in contrast, Orta challenged officers at the front line at the West Plaza, where they were outnumbered and overwhelmed. Moreover, although defendant claims Orta "did not . . . throw any objects at law enforcement officers," ECF No. 27 at 19, he acknowledged in the Statement of

1

Offense that he threw an object[1] to a crowd of law enforcement officers. ECF No. 21 at 6.

Thus, under a totality of the circumstances, Orta's actions in throwing the object at officers and pushing against bike rack and a line of officers was "exertion of . . . physical force so as to injure or abuse." *United States v. Bauer*, No. 21-cr-386-2 (TNM), ECF No. 195 at 4-5. *See also United States v. Galetto*, No. 21-cr-517 (CKK), ECF No. 84 at 12 (contrasting Yang's "defensive" actions with actively pushing against outnumbered officers).

## II.     A Below Guidelines Sentence Is Not Warranted

### A.     Physical Contact Enhancement Is Applicable

In contrast to Defendant's arguments, the application of the physical conduct enhancement in U.S.S.G. § 2A2.4(b)(1)(A) in this case does not overstate Orta's culpability. ECF No. 27 at 20-23. As he agreed in the plea agreement and accompanying statement of offense, the provision is applicable here because he forcefully pushed on a bike rack barricade on the opposite side of a police line and then against another rioter who was pushing against the bike rack barricade. ECF No. 21 at 6. These actions took place in the West Plaza at approximately 2:07 p.m., more than an hour after he entered the restricted area and minutes after officers ordered the crowd to disperse. *Id.*

Orta was at the front of the line of rioters throughout the day—at the first barricade by Peace Circle, the second barricade up Pennsylvania Walkway, and then at the West Plaza, as shown below in Image 1.

---

[1] At the plea hearing, in response to questioning from the Court, Orta stated that the object was a body-worn camera.



*Image 1: Open-Source Rendering of Capitol Building and Grounds as they appeared on January 6, 2021, credited to Twitter users @ne0ndistraction & @sansastark525.*

By the time he pushed against the line of officers at the West Plaza, he had been in the restricted area for more than an hour.

At 2:03 pm, Metropolitan Police Department officers broadcasted a dispersal order to the crowd. It began with two blaring tones, and then a 30-second announcement, which was played on a continuous loop:

> This area is now a restricted access area pursuant to D.C. Official Code 22-1307(b). All people must leave the area immediately. This order may subject you to arrest and may subject you to the use of a riot control agent or impact weapon.

3

Despite the warning and the deployment of riot control agents and impact weapons, few members of the crowd left. On the contrary, the mob in the restricted area continued to grow as crowds streamed towards the West Front, which looked like a battle scene, complete with an active melee and visible projectiles.

Mere minutes after that dispersal order was broadcast, Orta pushed against the officers—first by pushing against a bike rack barricade on the opposite side of a line of officers and then against another rioter pushing against the bike rack barricade.

After having actively defended their line for over an hour, the hundreds of officers at the front of the inauguration stage were flanked, outnumbered, and under continuous assault from the thousands of rioters directly in front of them as well as members of the mob who had climbed up onto scaffolding above and to the side of them, many of whom were hurling projectiles. Because many of the thousands of people surrounding the officers were not engaged in assaultive conduct, it was difficult for officers to identify individual attackers or defend themselves. By 2:28 pm, approximately 20 minutes after Orta pushed against the officers and with their situation untenable and openings in the perimeter having already led to breaches of the building, several large gaps appeared in the police defensive line at the West Front and a general retreat was called. With their defensive lines extinguished, several police officers were surrounded by the crowd. The rioters had seized control of the West Plaza and the inauguration stage.

Because Orta physically contacted the officers when he pushed against the barricade on the opposite side of the police line and then when he pushed against the other rioter pushing against the barricade, U.S.S.G. § 2A2.4(b)(1)(A) is applicable. The agreed-upon Guidelines calculation,

4

including the physical contact enhancement, appropriately accounts for Orta's culpability in removing the first two levels of barricade, throwing an object at officers on the West Plaza, and pushing against officers just after they issued an order for rioters to disperse.

### B.     Cases Cited Are Not Comparable

Defendant also attempts to identify other cases with similar aggregating and mitigating factors to suggest a below guidelines sentence is appropriate. Although both the government and defense counsel acknowledge that the no previously sentenced case provides the same balance of aggravating and mitigating factors to this case, many of the cases cited by defendant as comparable are distinguishable.

For example, Defendant attempts to analogize his case to those of defendants who have provided substantial assistance in the investigation or prosecution of others. *See* ECF No. 27 at 27-30. However, the instant case does not share the same mitigating factor. As discussed in the government's sentencing memorandum, ECF No. 28 at 12-13, Orta went to the FBI Office in Minneapolis on January 25, 2021, and came forward as someone the FBI was seeking to identify. He presented himself, but he was unable to answer detailed questions about his involvement, claimed he did not recall if he was yelling anything or if he threw anything or hit anyone, and said that he deleted all of his photos and videos from January 6, 2021. *Id.* In short, he knew law enforcement detected his activity and was looking for him, he provided his identity and contact information, but did not provide any additional details about his conduct. Accordingly, Orta's case is not comparable to defendants who testified at trials or otherwise provided substantial assistance to the government's investigation or prosecution.

### III.     CONCLUSION

For the reasons set forth above and in the government's sentencing memorandum, ECF No. 28, the government recommends that the Court impose a sentence of 12 months' incarceration, three years of supervised release, restitution in the amount of $2,000, and a special assessment fee of $100.

                              Respectfully submitted,

                              MATTHEW M. GRAVES
                              UNITED STATES ATTORNEY

BY:    */s/ Sarah W. Rocha*
            SARAH W. ROCHA
            Trial Attorney
            D.C. Bar No. 977497
            601 D Street NW
            Washington, DC 20579
            Telephone:   202-330-1735
            sarah.wilsonrocha@usdoj.gov